UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STRATEGIC INTENT, LLC, d/b/a
PALOUSE FALLS BREWING
COMPANY, *et al.*,

Plaintiffs,

v.

STRANGFORD LOUGH
BREWING COMPANY LIMITED,
*et al.*,

Defendants

NO.  CV-09-309-RHW

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

On April 5, 2011, a bench trial was held in the above-captioned case.
Previously, the Court entered default judgment on the issue of liability against all
Defendants based on their prior failures to comply with Court orders.  As expected,
Defendants did not appear at the bench trial.  Plaintiffs were represented by John
Giesa, Aaron Goforth, and Linda Schauble-Ruff.

### BACKGROUND

At issue is a license and franchise agreement between Plaintiffs and
Defendant SLBC, an Irish alemaker with operations in North America.  Plaintiffs
allege that SLBC fraudulently induced Plaintiffs to enter into the license
agreement.  In their Second Amended Complaint, Plaintiffs assert the following
causes of action: (1) fraud/negligent misrepresentation; (2) fraud/negligent material
misrepresentations in the inducement of the contract; (3) unilateral mistake; (4)
violation of Franchise Protection Act; (5) violation of Consumer Protection Act;
(6) breach of contract and (7) declaratory and injunctive relief.  Pls. Second
Amended Complaint, ECF No. 169.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1**

**FINDINGS OF FACT**

1. Plaintiffs' microbrewery business, Palouse Falls Brewing Company, was formed for the primary purpose of the production, distribution, and retail and wholesale sale of authentically Irish microbrews. *Id.* at ¶ 1.1.

2. In reliance on the specific representations made by Defendants, Plaintiffs represented to its customer base, the general public and local media, the Alcohol & Tobacco and Trade Bureau of the United States, and the government of Northern Ireland, as a brewer of exclusively authentic Irish ales, crafted in Ireland with traditional Irish recipes and ingredients directly imported from Ireland. *Id.*

3. Defendant Strangford Lough Brewing Company (SLBC) is a foreign corporation formed in Great Britain in the regions of the Home Countries of Outer London. It is not licensed to do business in the state of Washington. *Id.* at ¶1.3.

4. SLBC is purportedly in the business of the manufacturing, supplying and distributing of Irish ales and brewing equipment and technology, the development of proprietary business, marketing and sales systems, and the licensing of its proprietary business systems, its Strangford Lough brand, materials and brewing equipment and technology. It is also engaged in the business of selling exclusive licensing, franchise, distribution and manufacturing rights to its craft brand Irish ales, proprietary SLBC business systems, brewery production technology, brands, images, trademarks, trade names and logos, pursuant to a license program and package. Such comprehensive business package includes the sale and installation of a fully automated proprietary brewing equipment capable of producing a minimum production capacity of 75,000 liters of SLBC brewed products, ongoing technical assistance in all matters pertaining to the operation of a SLBC microbrewery business, and the sale of SLBC wort (*i.e.* the sugary liquid created from the first phase of the brewing process) to be used exclusively by such licensed microbrewery in the production of its SLBC craft Irish ales. *Id.*

5. SLBC owns all license, franchise, trademark and distribution rights world-

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 2**

wide to the Strangford Lough craft ales, known as St. Patrick's Best, St. Patrick's Ale, St. Patrick's Gold, Legbiter and Barelegs Brew. These beers and ales were named after historical Irish figures. *Id.* at ¶4.2.

6.      SLBC engages in business internationally, throughout the United Kingdom, Europe and the North American continent. SLBC actively targeted the business of U.S. citizens and was offering for sale exclusive licenses and franchises for the State of Washington territory. Declaration of Jeffrey Greene Regarding Pls. Damages, ECF No. 178, Ex. 1.

7.      Defendant Robert Little is, and was at all times material to this case, a director, officer, and an equity shareholder of SLBC, holding approximately two hundred ninety nine (299) shares of the total one thousand (1,000) shares of the issued and outstanding common stock of the corporation. Pls. Second Amended Complaint, ECF No. 169, ¶1.4.

8.      Defendant Anthony Davies, is and was at all times material to this case, married to Tracey Davies. Defendant Davies is, and was, at all times material to this case, a director, officer, and an equity shareholder of SLBC, holding approximately six hundred ninety nine (699) shares of the total one thousand (1,000) shares of the issued and outstanding common stock of the corporation. *Id.* at ¶1.5.

9.      Former Defendants James Stephenson and Wayne Stripp, in their individual capacities and doing business as Strangford Lough Brewing Co.; Strangford Lough Brewing Company North America; Strangford Lough Brewing Company; Strangford Lough Brewing Company, Inc.; Strangford Lough Brewing Company Inc., North America; and Strangford Lough Brewing Company, Inc. North America, were the sole owners and operators of the above-named enterprises (all said enterprises are collectively referred to herein as SLBC NA), headquartered in Langley, British Columbia, Canada. SLBC NA actively targeted the business of U.S. citizens and was offering for sale exclusive licenses and franchises for the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 3**

State of Washington territory.  *Id.* at ¶1.7.

10.    SLBC NA was incorporated on March 28, 2008 with the British Columbia Registrar of Companies, Province of British Columbia, naming as its sole directors, former Defendants Wayne Stripp and James Stephenson.  *Id.*

11.    Prior to November, 2008, SLBC sold its licensing franchise, trademark, and distribution rights covering the North American territories to SLBC NA. SLBC NA held itself out to the general public, and to Plaintiff, in particular, as the North American branch office of SLBC.  *Id.* at ¶4.3.

12.    Upon acquiring the licensing and franchise rights from SLBC for the North America territories, SLBC NA, in consult and coordination with SLBC, put together a business prospectus and a sales and marketing scheme, detailing the specifics of the licensing package to be offered to potential licensees.  The business prospectus also included promotional material pertaining to the strong Irish origins and traditions of SLBC's trademark ale.  The business prospectus further detailed the rich Irish history of the situs of SLBC's base operations, indicating that the business situs was located in a place in Ireland that was strongly associated with St. Patrick, the patron Saint who brought Christianity to Ireland.  *Id.* at ¶4.4.

13.    Once SLBC NA secured the licensing and franchise rights, it actively solicited potential licensees in the United States to compete for the exclusive franchise territories. SLBC knew at the time that SLBC NA was soliciting its customer base, that SLBC NA was using a name for its operations that was almost identical to SLBC's name, and that SLBC NA was representing to the public that it was the North American branch office for SLBC.  *Id.* at ¶4.5.

14.    As a part of its solicitation efforts, SLBC NA published, on the internet and in other postings, various advertisements and a Business Prospectus summarizing the licensing package and business opportunities that were being offered for sale. SLBC NA, former Defendants Stephenson and Stripp knew or should have known that said publication would be received by persons and entities within the State of

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 4**

Washington.  SLBC participated in the preparation of such materials.  This brochure made specific references to a presently operational Wort processing plant located in Ireland from which Strangford Lough shipped authentically processed Wort directly from Ireland to licensee's brewery, which the licensee then processed into Strangford Lough's Irish beer brands.  *Id.* at ¶4.6.

15.    SLBC held itself out to the Plaintiffs as principally engaged in the business of manufacturing, supplying, and distributing Irish ales and brewing equipment and technology, with related marking, sales systems, brands and materials.  It further held itself out as engaged in the business of selling for an annual fee, exclusive licensing, distributing and manufacturing rights to specified SLBC territories as it pertains to its SLBC brand craft ales, as well as its brewer production technology, brands, images, trademarks, trade names and logos, pursuant to a licensing program and package, which package purportedly includes the sale and installation of SLBC specified brewing equipment, ongoing technical assistance in the distribution and the sale of SLBC wort.  Declaration of Jeffrey Greene, ECF No. 178, Ex. 1.

16.    In September, 2008, Plaintiffs responded to SLBC NA's website posting of openings for potential licensees of SLBC products.  In the days and weeks that followed, SLBC NA and Plaintiffs communicated regarding the various details for the start-up of a franchise business and microbrewery in the State of Washington.  Pls. Second Amended Complaint, ECF No. 169 at ¶4.7.

17.    On October 7, 2008, at the invitation of SLBC NA, Plaintiffs attended a business opportunity synopsis meeting conducted by John Stephenson, Wayne Stripp, and SLBC NA, that was held near Vancouver, British Columbia.  The invitation to attend this meeting was extended to Plaintiffs within the State of Washington.  *Id.* at ¶4.8.

18.    At this meeting, various oral and written statements were provided to Plaintiffs regarding the Irish origins and traditions of the craft Irish ale for which

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5**

the licensing, franchise, manufacturing and distribution rights were being offered. *Id.* at ¶4.9.

19.    A written business prospectus was provided to Plaintiffs at the meeting. SLBC prepared or assisted in the preparation of the prospectus, as well as other marketing materials.  *Id.*

20.    In the prospectus, there were more than twenty references to the Irish origins and traditions of the SLBC's trademark craft ale and SLBC's base of operations. The prospectus represented that SLBC's business operations were located in a place that was strongly associated with St. Patrick, the patron saint who brought Christianity to Ireland.  It further made reference to a fully operational SLBC Wort processing plant located in Ireland, equipped to make necessary shipments of authentically produced Irish Wort , crafted from Irish recipes and Irish ingredients, including shamrock.  *Id.* at ¶4.9.

21.    The shamrock that SLBC actually used in its beers was not grown in Ireland, rather it was sourced from Germany.  Deposition of Anthony Davies, ECF No. 180, Ex. 13a.

22.    The prospectus also contained a financial pro forma outlining the annual profitability of the SLBC Microbrewery franchise producing 75,000 liters per month, which is a Case Equivalent (CE) of 8,800 CE's/month.  The 75,000 liter/month representation in the prospectus was based on SLBC's acknowledgment, made to John Stephenson in January, 2008, that the typical volume of finished beer produced by a "middle of the road" U.S. microbrewery is approximately 16,600 liters of finished beer per week.  Using a 4.3 week/month conversion factor, this equals 71,380 liters per month–within 95% of the volume represented in the prospectus.  Declaration of Jeffrey Greene, ECF No. 178, ¶¶5-7, Ex. 1, p. 9.

23.    In November, 2008, without Plaintiffs' knowledge, SLBC's affiliate, Legbiter, LLC, a Delaware limited liability company, and SLBC purported to

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 6**

acquire or re-acquire all rights SLBC originally sold to SLBC NA, and merged its business operations with SLBC"s main headquarters in Killyleagh, County Down, Northern Ireland, United Kingdom.  Part of the proprietary assets it received in the transaction included SLBC NA's business promotional material, which included the business prospectus provided to Plaintiffs and SLBC NA's business concepts and marketing strategies.  Pls. Second Amended Complaint, ECF No. 169, ¶4.10.

24.     Plaintiffs were informed that nothing had changed as a result of the change in the organization of SLBC and SLBC NA.  After the change, SLBC acted as if it was the successor in interest to all rights of SLBC NA, and continued to use, and still continues to use, a substantially similar business prospectus as that used by SLBC NA in its initial dealings with Plaintiffs.  *Id.*

25.     SLBC ratified and adopted all, or nearly all, of the representations that SLBC NA had made to Plaintiffs or otherwise remained silent as to the accuracy of the representations when questioned by Plaintiffs.  *Id.* at ¶4.12.

26.     Throughout the contract negotiations, SLBC continued to emphasize the Irish origins and traditions of its Wort  production facility.  SLBC stressed to Plaintiffs that the Irish connection was a material factor in differentiating their product from other non-Irish microbrews, as there were an overwhelming number of Irish descendants living in America who strongly preferred Irish ales.  SLBC further stressed the increased profitability that would be achieved in Plaintiffs' microbrewery business, due to its ability to provide, at reduced costs, its own advanced Wort  supply.  *Id.* at ¶4.13.

27.     On many occasions, Plaintiffs conveyed to SLBC the paramount significance of this Irish connection. SLBC assured Plaintiffs that all of the ingredients used to make the advanced Wort , except the water, were grown and produced in Ireland. Plaintiffs had many questions regarding the Wort  processing plant in Ireland. Defendants deflected inquiries and failed to directly answer these inquiries.  *Id.* at ¶4.14.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7**

28.    At one point when Plaintiffs suggested that they be accorded a tour of the wort processing plant in Ireland, Plaintiffs were encouraged, instead, to visit SLBC in New York City where SLBC could arrange for another tasting of SLBC brand ales.  At no time did SLBC advise Plaintiffs that, in actuality, there was no functioning SLBC wort plant located in Ireland or elsewhere.  *Id.*

29.    On November 24, 2008, SLBC and Plaintiffs entered into an Exclusive Microbrewery License, Equipment, and Wort Supply Agreement.  Pursuant to the terms of the contract, SLBC was to provide Plaintiffs at the cost of $330,000.00 a fully operational "turn-key" microbrewery.  This was to include all the training, supervision, technical support and instruction necessary for Plaintiffs to operate an SLBC franchise brewery, and a fully installed and SLBC designated and commissioned brewery equipment package, sufficient to implement a fully operational SLBC microbrewery with a monthly minimum production capacity of 75,000 liters of SLBC brewed products that would be of the same color, consistency, taste and quality of the SLBC brand ales it was to replicate.  The equipment was to be ready for shipment to Plaintiffs' place of business on or before January 9, 2009. Within fourteen (14) days after the arrival of the equipment, SLBC was to have fully operational and commissioned microbrewery. The first batch of product was to be brewed, bottled and kegged under SLBC supervision not later than twenty-one (21) days after delivery of the said brewery equipment to Plaintiffs.  *Id.* at ¶4.15.

30.    In addition, the contract provided for licensing rights to use all propriety SLBC systems, equipment and technology, brands, and trademarks, all of which would be supplied to Plaintiffs by SLBC for its use in the exclusive territories of Washington, California, Idaho and Oregon. The contract further provided for exclusive manufacturing rights of SLBC products in the state of Washington, and exclusive distribution rights in Washington, California, Idaho and Oregon. Plaintiffs were accorded first rights of refusal to the licensing, manufacturing rights

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 8**

to other territories.  The license term was to commence on March 1, 2009.  In consideration of the licensing rights, Plaintiffs agreed to pay the sum of $50,000.00 for the first annual term, and $18,000.00 for each annual term thereafter.  *Id.* at ¶4.16.

31.     In accordance with the contract, Plaintiffs wired money to SLBC in the amount of $50,000.00 for the license fee and $82,500.00 for the first equipment installment payment.  *Id.* at ¶4.17.

32.     On December 23, 2008, SLBC confirmed that all of the equipment that was to be delivered under the contract had been inspected and was in satisfactory condition.  Pursuant to the contract, Plaintiffs immediately wired money to SLBC in the amount of $165,000.  *Id.* at ¶4.18.

33.     During the period of January 18, 2009 through approximately April 9, 2009, the substantial majority of the brewing equipment was delivered to Plaintiffs' microbrewery.  On April 30, 2009, SLBC began installing the equipment.  *Id.* at ¶4.19.

34.     In the months that followed, there were numerous equipment failures.  Most of the equipment defects did not come to light until months later when SLBC attempted to commission the equipment.  *Id.* at ¶4.20.

35.     Some of the equipment that was delivered did not conform to the terms of the contract.  For instance, a used bottle capping machine of a different brand than what was represented to Plaintiffs was supplied by Defendants and was faulty.  A twenty-four spout bottler rinser was specified under the contract and a four spout bottle rinser was supplied.  *Id.*

36.     There were significant problems with the cooling jacket insulation and the glycol chiller compressor that significantly compromised the quality of the brew products.  *Id.*

37.     Attempts were made to fix these problems, but they still remain unsolved.  *Id.*

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 9**

38.    Some of the specified equipment was never delivered.  *Id.*

39.    The delays, equipment failures, equipment procurement issues and non-conforming items caused Plaintiffs considerable delays, loss of productivity and profits, and damage to Plaintiffs' sample brews, brewing inventory and supplies. *Id.*

40.    The problems and issues continue to remain to the present day.  *Id.*

41.    Plaintiffs relied on Defendants' superior knowledge and skill to determine what equipment accessories would be necessary for the efficient operation of a microbrewery.  *Id.* at ¶ 11.4.

42.    Pursuant to the contract, SLBC expressly warranted for a period of one year all of the equipment provided and its workmanship.  Declaration of Jeffrey Greene*, ECF No. 178, Ex. 4.

43.    The contract provided that SLBC was to provide Plaintiffs with SLBC's own Advanced Wort  shipped directly from Ireland to Plaintiffs' place of business no later than February 1, 2009, provided that Plaintiffs' initial order of the wort was to be received by SLBC no later than December 20, 2008.  Pl. Second Amended Complaint, ECF No. 169, ¶4.21.

44.    On May 20, 2009, Plaintiffs received from SLBC the initial malt extract used in the production of the wort.  This was only a small sampling of what had been ordered in January, 2009.  *Id.*

45.    The wort was not in conformity with the contract requirements.  The malt extract was not produced by SLBC.  Rather, it was produced by an independent malt manufacturer in Scotland using the malt manufacturer's own recipes and ingredients.  As a result, none of the ingredients were of Irish origin.  As the wort supply was not manufactured in-house by SLBC, the cost of the malt extract supplied was greater than represented by SLBC.  *Id.*

46.    The wort could not replicate the authenticity of the Irish recipe, and the wort, as brewed could not and did not replicate SLBC's craft ales.  *Id.*

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10**

47.    Through SLBC's attempts at performance under the contract, Defendant repeatedly represented to Plaintiffs that its wort processing plant would be fully operational in the very near future.  Plaintiffs relied on these representations.  *Id.*

48.    As part of the bottle labeling process, SLBC's counsel worked with SLBC and Plaintiffs in order to design uniform labels for all of SLBC brand brews.  Throughout this process, SLBC insisted that the labels carry appropriate references to the Irish origins of the beer, and the Irish ingredients used to make the beer.  *Id.*

49.    The United States Alcohol & Tobacco and Trade Bureau approved the SLBC brand labels that made reference to the beer having been crafted in Ireland from ingredients imported from Ireland.  *Id.*

50.    Because the wort is not manufactured in Ireland with Irish ingredients, Plaintiffs are unable to market any SLBC beer that may be brewed at its facility.  *Id.* at ¶4.23.

51.    Until such time as SLBC had a fully functioning and operational wort processing plant in Ireland and the ingredients used to produce the wort originated from Ireland, the SLBC brand labels were inaccurate and misleading and could not be used.  Plaintiffs were not permitted to use labels that SLBC did not approve, and the SLBC labels were required to be uniform.  *Id.*

52.    Because SLBC failed to perform as promised in the contract, Plaintiffs have incurred and continue to incur, substantial out-of-pocket expenses.  *Id.* at ¶4.24.

53.    Plaintiffs presented Defendants with a written Notification/Cure letter.  In response, SLBC indicated to Plaintiffs that some of the default cannot be corrected, that it had no intention of correcting others, some of the defaults Plaintiffs will have to work around, and some of the defaults may be remedied in the future, although no clear indication of how and when the defaults would be cured was provided.  *Id.* at ¶4.25.

54.    Since receiving the letter and before the cure period expired, SLBC offered to independent brewers in the United States the opportunities to manufacture and

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 11**

distribute SLBC ales in various other territories that were not included in Plaintiffs' licensing agreement. These territories are included as a part of Plaintiffs' first refusal rights. SLBC has not received Plaintiffs' consent to make these offers, and Plaintiffs have not been accorded the opportunity to assert its first refusal rights regarding these offers. *Id.* at ¶4.28.

55. Plaintiffs' microbrewery continues to remain in a state of disrepair and is not capable of production. The test brews do not resemble the SLBC brands. *Id.* at ¶4.29.

56. The contract contains provisions setting forth that the SLBC wort to be supplied to Plaintiffs were to be made by SLBC in Ireland. In addition, the contract stated that SLBC would provide the necessary technical assistance in order that Plaintiffs' brewed product would be of the same color, consistency, taste and quality as if such brewed products had been brewed in Ireland by SLBC. Declaration of Jeffrey Greene, ECF No. 178, Ex.4.

57. SLBC never had its own wort processing plant located in Ireland or elsewhere. At the time of contracting, it had a limited business presence in Ireland. It has never independently brewed its own beers. Pl. Second Amended Complaint, ECF No. 169, ¶ 8.3.

58. The sample beers which were provided to Plaintiffs were contract-brewed from a Scottish or English brewery with ingredients that came from many places other than Ireland. *Id.*

59. SLBC's recipe is not authentic. It was remotely replicated from other popular Irish beer brands and could not be replicated by SLBC without the same ingredients, recipes and malt. *Id.*

60. The licensing contract at issue in this case that was initially offered to Plaintiffs by Defendants SLBC NA, James Stephenson, and Wayne Stripp and ultimately entered into between Plaintiffs and SLBC, pertained to the distribution of goods under a marketing plan prescribed or suggested in substantial part by

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 12**

SLBC.  The marketing plan included marketing strategies, access to SLBC marketing materials, volume buying power, profit and productivity information, and proven sales information. The licensing package also included access to advice, consultation and technical assistance pertaining to required uniform trademark labeling requirements, promotional materials, the operation and management of a microbrewery.  The licensing program pertained to exclusive locations and labels, brand name recognition and trademark protection, tested marketing techniques, pre-established customer bases, assistance in a fast-tracked process for federal and state licensing and permits. It also included a pre-sale portion of beer production from SLBC's list of contacts.  *Id.* at ¶9.2.

61.    The operation of Plaintiffs' business under said licensing contract was substantially associated with the SLBC trademark, trade name, logo, advertising and commercial symbol designating, owned by, or licensed by SLBC. *Id.* at ¶9.3.

62.    Plaintiffs paid, and were required to pay, a franchise fee in a lump sum for each year of the franchise. For an additional sum and under other terms and conditions, Plaintiffs were given a first right of refusal for licensing and franchise rights for the territories of California, Idaho and Oregon. *Id.* at ¶9.4.

63.    In October, 2009, Plaintiffs amended their business plan from operating a 75,000 liter/month or 8,800 EC per month microbrewery with exclusive distribution rights in Washington, Idaho, Oregon, and California, to operating a much smaller craft brewery using different equipment, recipes, ingredients, processes, labeling, product names, and without any of the franchisor marketing support or national brand recognition promised by SLBC.  Declaration of Jeffrey Greene, ECF No. 178, ¶14.

64.    The equipment delivered by SLBC far exceeds the requirements of Plaintiffs' revised operation, resulting in increased costs of production and various inefficiencies in its brewery operations.  *Id.* at  ¶15.

65.    Plaintiffs' average monthly production is approximately 3,300 liters of beer.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13**

*Id.*

66.    Of all the equipment Plaintiffs purchased from SLBC, Plaintiffs only use in its current operations one of the six fermentation vessels, one of the three maturation vessels, the hot liquor (water) tank, the Brite Beer tank, and only the washing side of the keg washer/filler, as the filling side does not operate properly. *Id.*

67.    Approximately two-thirds of the leasehold expenses that were incurred to follow the SLBC model are not necessary to operate under the downsized business plan. *Id.*

68.    The bottling equipment has never properly operated and all of Plaintiffs' sales have been of draft beer stored in kegs.  *Id.* at ¶25.

69.    Plaintiffs paid a premium for franchise rights and opportunities that SLBC was suppose to provide to Plaintiffs.  Had it fulfilled its promises to Plaintiffs, there would have been a ready-made market and demand for Palouse Falls Brewery products.  Declaration of James M. Weidenbaum, ECF No. 182, p. 15.

70.    With respect to Defendants SLBC, Little and Davies, the contract at issue provides that should Plaintiffs pursue a cause of action against SLBC, the licensor, venue and jurisdiction shall be in Whitman County, Washington and the choice of law shall be United States laws.  Declaration of Jeffrey Greene, ECF No. 178, Ex. 4.

71.    At all times material to this case, Plaintiffs solely did business in the State of Washington.  SLBC engages in business internationally, throughout the United Kingdom, Europe and the North American Continent.  Both SLBC and SLBC NA actively targeted the business of United States citizens and were offering for sale exclusive licenses and franchises for the State of Washington territory.  Declaration of Jeffrey Greene, ECF No. 178, Ex. 1.

72.    In a February 11, 2009 email to Plaintiff Greene, Defendant Little admitted that the system that SLBC had delivered to Plaintiffs was a "guinea pig" first unit

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14**

that was being tweaked by SLBC's master brewer as he completed the setup process.  Declaration of Jeffrey Greene, ECF No. 178, ¶11.

### CONCLUSIONS OF LAW

1.    Upon default the factual allegations of Plaintiffs' complaint are taken as true, except those facts relating to the amount of damages.  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

2.    After a default judgment has been entered, a party has no right to a jury trial under either Fed. R. Civ. P. 55(b)(2), which authorizes a district court to hold an evidentiary hearing to determine the amount of damages, or the Seventh Amendment.  *Adriana Intern. Corp. v Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

3.    Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).

4.    Under Washington law, "the following factors must coincide" for there to be personal jurisdiction over a nonresident defendant: "(1) The nonresident defendant ... must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction ... must not offend traditional notions of fair play and substantial justice."  *Noel v. Hall*, 341 F.3d 1148, 1169 (9th Cir. 2003)(*quoting Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 767 (1989)).  These actions also satisfy the minimum contacts requirement of the federal Due Process Clause.  *Id.* (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

5.    The Court has personal jurisdiction over Defendants.  Defendants pursued purposeful acts and business within the State of Washington, including the transactions of business in this State and the commission of tortious acts in this State.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 15

6.    The contacts with the States of Washington include the following:

a.    Defendants actively targeted, advertised, pursued and solicited the business of United States citizens, including residents from the State of Washington and Plaintiffs;

b.    The offers, acceptance of offers and substantial bulk of the contract negotiations occurred via e-mail, postal service or by phone, at Plaintiffs' principal place of business in Washington;

c.    Defendants' misrepresentations of material facts; and deceptive and unfair trade practices occurred in the State of Washington;

d.    The place of performance of the contract was in the State of Washington;

e.    The personal property in dispute is located in the State of Washington;

f.    The franchise business in dispute is located in the State of Washington;

g.    The place of the delivery of goods was in the State of Washington;

h.    The place where the subject matter of the contract is located is in the State of Washington;

I.    The territory to which the licensing and franchise rights were to be located included the State of Washington; and

j.    The domicile, residence, nationality, place of incorporation and place of business of the Plaintiffs are located in the State of Washington.

7.    Defendants have submitted themselves to the jurisdiction of the Washington courts by virtue of jurisdiction and venue clauses of the written contract between the parties, Washington's Franchise Investment Protection Act, and Washington's Consumer Protection Act.  The State of Washington is the only jurisdiction that has the most significant relationship with the causes of action in this case.

8.    The Court has subject matter jurisdiction over this dispute.  28 U.S.C. § 1332(a) and 28 U.S.C. § 1367(a).  Venue is proper in this Court.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 16**

9.     All notices as required by federal law that were required to be given to Defendants regarding all court proceedings and hearings in this matter have been properly and timely made.  Defendants have had full and equal access to the Court and have had ample opportunity to be heard in this matter and to appear and defend any and all claims made by Plaintiffs.

10.     After entry of the Order Granting Defense Counsel's Motion for Leave to Withdraw, SLBC failed to retain substitute legal counsel. Defendants  SLBC, Davies and Little appeared and participated at the hearing on Counsel's Motion for Leave to Withdraw.  SLBC was given ample opportunity to obtain legal counsel but failed to do so.

**Piercing the Corporate Veil**

11.     Under Washington law, a court may disregard the corporate form, but only when it is intentionally used to violate or evade a duty, and when such disregard is necessary to prevent unjustified loss to the injured party.  *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wash. App. 918, 924 (1999) (citation omitted).  Piercing the corporate veil is an equitable remedy imposed to rectify an abuse of the corporate privilege.  *Truckweld Equip. Co. v. Olson*, 26 Wash. App. 638, 643 (1980).

12.     In their Second Amended Complaint, Plaintiffs allege that Defendants Robert Little, Anthony Davies and Michael Ross were the sole equity shareholders of SLBC, and allege that throughout its dealings with Plaintiffs, SLBC disregarded its corporate form, and said shareholders of SLBC intentionally misused, controlled and manipulated the corporate form to accomplish fraud on their behalf and at the expense of Plaintiffs.  Plaintiffs also allege that SLBC was undercapitalized. ECF No. 169 ¶¶ 3.1-3.6.

13.     Defendants SLBC represented to the Court that it has minimal funds and it was unable to secure counsel to proceed in this matter.

14.     The Court disregards the corporate form of SLBC, and expressly determines

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 17**

that the shareholders, namely Defendants Little and Davies, are personally liable for the wrongdoing of SLBC towards Plaintiffs.

**Breach of Contract**

15.    Generally, a party injured by breach of contract is entitled (1) to recovery of all damages that accrue naturally from the breach, including any incidental or consequential losses and (2) to be put into as good a pecuniary position as he would have had if the contract had been performed. *Columbia Park Golf Course Inc. v. City of Kennewick*, 160 Wash. App. 66, 82-83 (2011). Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty. *Id.*

16.    The contract at issue in this case involved the offer and sale, in Washington to Washington residents, of a franchise business opportunity for a comprehensive licensing, manufacturing, distribution and microbrewery package that included the purchase, assembly, installation of specifically mandated SLBC brewery equipment and onsite SLBC technical support, training and supervision essential to the operation of a SLBC turnkey microbrewery operations.

17.    With respect to equipment issues, there were numerous breaches of performance on SLBC's part that included equipment procurement, equipment defects, non-conforming equipment and equipment delays.

18.    Plaintiffs accorded SLBC ample opportunity to cure the defaults.

19.    These issues persist and include the following defective equipment or necessary items that are required for the efficient operation of the microbrewery.

      a.    Non-conforming or defective bottle capping machine;

      b.    Defective chiller/glycol system;

      c.    Defective cooling jackets on the bottom of the Bright Beer tank;

      d.    Defective kegging equipment;

      e.    Broken housing on the spare pump;

      f.    Non-conforming bottle rinser;

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 18**

g.    Lacking carbon dioxide regulators for the Bright Beer tank, bottle filler, and keg filler;

h.    Lacking mother carton sealer;

I.    Lacking calibrated site glass for the liquid level on the hot liquor tank and dissolving vessel;

j.    Lacking adequate work surface for the bottle transfer from pallets to the bottle labeling machine;

k.    Lacking adequate work surface for the bottle transfer from the sanitizer to the bottle filler;

l.    Lacking adequate work surface for the bottle transfer from bottle capper to the carrier and mother carton packing;

m.    Lacking heating element for the kegging equipment;

n.    A method for pressurizing the product to the bottle filler is lacking;

o.    A matching receptacle and plug for the kegging machine product pump is lacking; and

p.    A hose connection and undamaged fan cover for the concentrate pump.

20.    Prior to the expiration of the cure period, at no time had SLBC been able to replicate the color, consistency, taste and quality of its own SLBC brands at Plaintiffs' microbrewery.  This was a gravamen of the contract and constitutes a material breach.

21.    The acts and conduct of Defendants as set forth in this Order constitute material breaches in their performance.

22.    Plaintiffs performed their obligations under the contract at issue and made a good faith effort to mitigate their losses and damages.

23.    SLBC's breaches of contract have proximately caused Plaintiffs to suffer loss and injury.

**Economic Loss Rule/Independent Duty Doctrine**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 19**

24.    The economic rule bars recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses. *Alejandre v. Bull*, 159 Wash. 2d 674, 683 (2007). If the economic loss rule applies, the party will be held to contract remedies, regardless of how the plaintiff characterizes the claims. *Id.* "The key inquiry is the nature of the loss and the manner in which it occurs *, i.e.* are the losses economic losses, with economic losses distinguished from personal injury or injury to other property. If the claimed loss is an economic loss, and no exception applies to the economic loss rule, then the parties will be limited to contractual remedies." *Id.*

25.    In *Eastwood v. Horse Harbor Foundation, Inc.*, the Washington Supreme Court explained that the economic loss rule is not really a rule, but "a case-by-case question of whether there is an independent tort duty." 170 Wash. 2d 380, 389 (2010). If there is no independent tort duty, tort does not provide a remedy. *Id.*

26.    Under Washington law, SLBC has an independent duty to not commit fraud. *Id.*

27.    Under Washington law, Plaintiffs are permitted to sue for negligent misrepresentation / fraud in the inducement, in addition to bringing a breach of contract claim.

**Negligent Misrepresentation / Fraud in the Inducement**

28.    To establish negligent misrepresentation, a plaintiff must show by clear, cogent, and convincing evidence that the defendant negligently supplied false information the defendant knew, or should have known, would guide the plaintiff in making a business decision, and that the plaintiff justifiably relied on the false information. *Ross v. Kirner*, 162 Wash. 2d 493, 499 (2007). In addition, the plaintiff must show that the false information was the proximate cause of the claimed damages. *Id.*

29.    Defendants SLBC, Davies, and Little made numerous representations of existing facts to Plaintiffs, and specifically adopted and ratified these same

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 20**

representations of fact made by SLBC's predecessor, SLBC NA, to Plaintiffs. These representations were made during the negotiations leading up to the contract at issue between the parties.  Such facts were false and misleading and material to Plaintiffs' decision to contract with SLBC.

30.    Defendants knowingly, willingly, and intentionally deceived Plaintiffs in making said representations to them.

31.    Defendants knew the statements were false when they were made and they were made with the intent that Plaintiffs rely and act upon them.

32.    SLBC was aware of the false and misleading representations SLBC NA made to Plaintiffs during the contract negotiations.  It has accepted, confirmed and ratified the false and misleading representations.

33.    Defendants SLBC, Little and Davies, in addition to the representations set forth in the business prospectus and presentation, on repeated occasions and prior to entering into the contract, directly stated or purposely let Plaintiffs believe by their statements or silence that certain misrepresentations of material fact were true, when in fact the representations were false.

34.    The material misstatement of facts include the following representations:

a)    SLBC NA was the North American branch office of SLBC;

b)    SLBC had a true and legitimate business presence located in Killyleagh, County Down, Northern Ireland;

c)    SLBC had a fully operational wort  processing facility located in Killyleagh, County Down, Northern Ireland;

d)    SLBC's wort processing plant was capable of shipping, directly from Ireland, the necessary wort supply to Plaintiff;

e)    SLBC directly manufactured and brewed, from its own facilities located in Ireland, and under SLBC's direct supervision and control, the SLBC brand craft ale.  The sample beer under the SLBC brands Plaintiffs tasted prior to contracting, and for which it was to replicate, were directly

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 21**

brewed by SLBC from its own facilities located in Ireland;

f)    The recipes for SLBC craft ales came from traditional and time honored Irish recipes, which recipes stemmed back some one thousand (1,000) years ago;

g)    That the ingredients that were used to make the wort, including the shamrock, was grown and produced locally in Ireland;

h)    The wort that would be supplied to Plaintiffs would be authentically produced in Ireland and directly shipped from SLBC's own processing plant in Ireland;

I)    The SLBC wort used to make SLBC brand craft Irish ales came from a consistent source and recipe;

j)    The wort to be supplied to Plaintiffs as part of the contract would come from the same recipe and wort/supply as used to make all other SLBC brands, including the sample ales Plaintiffs had tasted prior to contracting;

k)    The wort to be supplied to Plaintiffs as part of the contract would come from SLBC's own processing plant in Ireland from local Irish ingredients;

l)    The beers that Plaintiffs would produce would be of the same color, consistency, taste and quality of the SLBC ales purportedly brewed in Ireland by SLBC;

m)    Plaintiffs' microbrewery equipment would be delivered and fully operational within two months from contracting;

n)    Plaintiffs' microbrewery would be fully operational and capable of brewing a monthly minimum production capacity of 75,000 liters of SLBC brewed products within three months from the date of contracting.

35.    These representations were material to Plaintiffs' contract negotiations and their ultimate decision to enter into the subject contract with SLBC.

36.    All the representations set forth above are false.  Defendants knew or should

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 22**

have known that the representations were false, or that they were ignorant of the truth of the representations; and they intended that Plaintiffs would act in reliance of the false representations.

37.    Plaintiffs have a right to rely on the representations and suffered damage.

38.    In addition, SLBC's representation that its microbrewery system was "turnkey" necessarily connoted that its system had already been field tested and proven successful and that the turnkey system would be a standardized replica of the field tested and proven successful system.

39.    SLBC's representations that its microbrewery system was turnkey were knowingly false when they were made.

40.    SLBC did not have and did not provide Plaintiffs with a "turnkey" microbrewery extract dissolving system capable of producing its brews by adding water and dissolving and fermenting its wort.

**Franchise Investment Protection Act**

41.    The legislature enacted Washington's Franchise Investment Protection Act (FIPA) to curtail franchisor sales abuses and unfair competitive practices. *East Wind Express, Inc. v. Airborne Freight Corp*., 95 Wash. App. 98, 102 (1999).  To prevent these practices, FIPA generally requires franchise offers to be registered with the state and material information be disclosed to prospective franchisees. *Corp v. Atlantic Richfield Co.*, 122 Wash.2d 574, 579-80 (1993). The information disclosed must be accurate and cannot omit material facts. *Id.*

42.    The transactions set forth in this Order constitute sales and offers to sell a franchise or subfranchise in the State of Washington and are governed by Washington's Franchise Investment Protection Act, Wash. Rev. Code § 19.100 *et seq.*

43.    Wash. Rev. Code § 19.100.170 provides:

It is unlawful for any person in connection with the offer, sale, or purchase

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 23

of any franchise or subfranchise in this state directly or indirectly:

> (2) To sell or offer to sell by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading.

> (3) To employ any device, scheme, or artifice to defraud.

> (4) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

44.    A fact qualifies as material under FIPA if a reasonable person would consider it important in determining what action to take with respect to the transaction in question. *Morris v. International Yogurt Co.*, 107 Wash. 2d 314, 324 (1986).

45.    FIPA provides, "It is unlawful for any franchisor or subfranchisor to sell or offer to sell any franchise in this state unless the offer of the franchise has been registered under this chapter or exempted under RCW 19.100.030." Wash. Rev. Code § 19.100.020(1).

46.    An application for registration must be filed with the director of financial institutions and be signed by "the franchisor, subfranchisor, or by any person on whose behalf the offering is to be made...." § 19.100.040(1). When the person filing the registration application is a subfranchisor, the application must include the same information as required of the franchisor. § 19.100.040(2).  The registration application must include a copy of the franchisor's or subfranchisor's offering circular, a copy of all agreements to be proposed to franchisees, a consent to service of process, and any other information the director deems necessary. § 19.100.040(1).  A person must deliver a copy of the offering circular and any proposed franchise agreements to the prospective franchisee at least 10 business days before selling the franchise. § 19.100.080.

47.    Section 19.100.020 proscribes any "franchisor" from offering or selling

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 24**

unregistered franchises. "Franchisor" is defined as "a person who grants a franchise to another person." § 19.100.010(7). Section 19.100.140(1) proscribes any "person" from offering or selling an unregistered franchise. A "person" is further defined to encompass natural persons, "as well as the individual officers, directors, and other persons in act of control of the activities of each such entity. § 19.100.010(12).

48.    Pursuant to the FIPA, SLBC is a "franchisor." § 19.100.010(7).

49.    Pursuant to the FIPA, Defendants offered and sold and Plaintiffs purchased a franchise or subfranchise.

50.    Defendants are each affiliates with the other within the meaning of the FIPA.

51.    Plaintiffs were charged and paid a franchise fee within the meaning of the FIPA.

52.    Defendants violated § 19.100.080 by failing to timely deliver to Plaintiffs either an approved offering circular, or a financial disclosure document, or any of the financial and other documents, information and material disclosures required to be made prior to sale to a franchisee under Wash. Admin. Code §§ 460-80-125, 140, 300, 305 and 315.

53.    Defendants, in connection with the offer or sale of a franchise to Plaintiffs, made untrue statements of material fact and omitted numerous material facts necessary in order to make the statements made in light of the circumstances under which they were made not misleading, in violation of § 19.100.170(2).

54.    Defendants employed a device, scheme and artifice to defraud, in violation of § 19.100.170(3).

55.    Defendants engaged in acts, practices, and a course of business which operated as a fraud or deceit upon Plaintiffs, in violation of § 19.100.170(4).

56.    Defendants acted in bad faith towards Plaintiffs in violation of Wash. Rev. Code § 19.100.180(1).

57.    Defendants are liable to Plaintiffs, pursuant to § 19.100.190, for the damages

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 25

caused by their violations of §§ 19.100.020, 19.100,080, and 19.100,170(1),(2), (3), and (4).

58.    Section 19.100.190(2) provides:

(2) Any person who sells or offers to sell a franchise in violation of this chapter shall be liable to the franchisee or subfranchisor who may sue at law or in equity for damages caused thereby for rescission or other relief as the court may deem appropriate.

59.    Section 19.100.190(3) provides:

The suit authorized under subsection (2) of this section may be brought to recover the actual damages sustained by the plaintiff and the court may in its discretion increase the award of damages to an amount not to exceed three times the actual damages sustained: PROVIDED, That the prevailing party may in the discretion of the court recover the costs of said action including a reasonable attorneys' fee.

60.    The Court declines to award treble damages under the FIPA.  The Court concludes that lost profits damages are sufficient to compensate Plaintiffs for the the FIPA violations as well as achieve the goals and purposes of FIPA.

61.    The Court exercises its discretion to award Plaintiffs their reasonable attorneys fees' and costs under § 19.100.190(3).

62.    Defendant Little and Davies are personally liable as control persons, officers or directors of SLBC or their affiliates for the violations of FIPA and the damages suffered by Plaintiffs as a result of the FIPA violations. § 19.100.10(13).

**Washington Consumer Protection Act**

63.    The Washington Consumer Protection Act (WCPA) prohibits entities and individuals engaged in trade or commerce from employing unfair or deceptive practices in the course of conducting business with consumers. § 19.86.020.

64.    A person who has been injured in his or her business or property may bring a civil action for injunctive relief, actual damages sustained, and reasonable attorney

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 26**

fees and costs, and that person may seek treble the amount of actual damages up to $25,000. § 19.86.090.

65.    To prevail on a WCPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986).

66.    "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." *Id.* at 538. However, if there is a "likelihood" that other plaintiffs will be injured similarly, a private, contract breach could still impact the public interest. *Id.* The factors indicating a public interest impact are:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?

*Id.*

67.    Defendants' acts and misconduct set forth in this Order constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce pursuant to the WCPA.

68.    The unfair or deceptive acts and practices committed by Defendants impact and affect the public interest. Defendants' unfair or deceptive acts and practices proximately caused Plaintiffs to suffer injury to their business or property for which injuries Plaintiffs are entitled to recover damages.

69.    If a corporate officer participates in wrongful conduct or with knowledge approves of the conduct, then the officer as well as the corporation, is liable for the penalties. *Grayson v. Nordic Constr. Co.*, 92 Wash. 2d 548, 554 (1979).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 27**

70.     Defendants Little and Davies have participated in, or with knowledge, approved, ratified, or acquiesced in the violations of the CPA.  As such, these Defendants are personally liable to Plaintiffs for such violations and the damages caused.

71.     The Court declines to award treble damages under WCPA.  The Court concludes that lost profits damages are sufficient to compensate Plaintiffs for the WCPA violations as well as achieve the goals and purposes of WCPA.

72.     The Court exercises its discretion to award Plaintiffs their reasonable attorneys fees' and costs under § 19.85.090.

**Damages**

73.     As a result of the breaches in performance in contract, the material misrepresentations of fact made in the inducement of the contract, and with respect to the franchise business it sole to Plaintiffs, the false advertising and unfair methods of competition and unfair or deceptive trade practices in the conduct of trade or business, Plaintiffs have suffered and continues to suffer damages.

74.     Plaintiffs attempted to mitigate these damages by operating the current microbrewery operation under a substantially downsized business plan, using whatever equipment it could salvage for its production capabilities and local demand, and conducing operations form the premises it leased under a minium five year lease.

75.     Plaintiffs have elected the remedy of affirmance of the contract and seek an award of damages arising from the breach of contract, tort, and statutory causes of actions under the Washington Consumer Protection Act (Wash. Rev. Code § 19.86 *et seq.*) and the Washington Franchise Investment Protection Act (Wash. Rev. Code § 19.100 *et seq.*).

76.     Under Washington law, torts which can properly be said to be done in the management of community business, or for the benefit of the community, will remain community torts with the community and the tortfeasor separately liable.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 28**

*deElche v. Jacobsen*, 95 Wash. 2d 237, 246 (1980).  A debt is presumed to be a community obligation; the burden of proving that a debt is not community obligation rests on the community.  *Pacific Gamble Robinson Co. v. Lapp*, 95 Wash. 2d 341, 343 (1980).  As such, the judgment issued herein against the individual Defendants shall also be a judgment against the individual Defendants' marital communities.

77.    Plaintiffs have suffered injury as a proximate result of Defendants' wrongful conduct.

78.    "The purpose of damages in a breach of contract action is 'not the mere restoration to a former position, as in tort, but the awarding of a sum which is the equivalent of performance of the bargain—the attempt to place the plaintiff in the position he would be in if the contract had been fulfilled.'" *Columbia Park Golf Course*, 160 Wash. App. at 86 (citation omitted).

79.    Lost profits may be recovered when "(1) they are within the contemplation of the parties at the time the contract was made; (2) they are the proximate result of defendant's breach, and (3) they are proven with reasonable certainty.  *Larsen v. Walton Plywood Co.,*, 65 Wash. 2d 1, 15 (1964).

80.    The "new business rule" ordinarily prevents an unestablished business from recovering lost profits as damages for breach of contract.  *Id.*  Profits for a new business are generally "too speculative, uncertain, and conjectural to become a basis for the recovery of damages."  *Columbia Park Golf Course*, 160 Wash. App. at 88 (citation omitted).  Such damages may be recovered, however, if a reasonable estimate can be made by analyzing market conditions and profits of substantially similar businesses.  *Id.*

81.    Additionally, the costs the plaintiffs would have incurred had there been no breach must be considered in determining the plaintiffs' lost profits.  *See Platts v. Arney*, 50 Wash. 2d 42, 46 (1957).

82.    Lost profits were within the contemplation of the parties and were the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 29

proximate result of Defendants' misconduct.

83.    James M. Weidenbaum was a qualified expert to testify as to the lost profits experienced by Plaintiffs as a result of SLBC's breaches of contract.

84.    Mr. Weidenbaum concluded that Plaintiffs paid a premium for franchise rights and opportunities that SLBC was suppose to provide to Plaintiffs and had SLBC fulfilled its promises, there would have been a ready-made market and demand for Palouse Falls Brewery products.  The Court accepts this conclusion as true.

85.    Plaintiffs had well-founded and solid reasoning to believe and expect that had SLBC delivered on its premises, Plaintiffs would have found profitable market success.

86.    The SLBC business prospectus calculated the expected annual profit of $433,283.00.

87.    The SLBC NA Business Prospectus calculated the expected annual profit of $580,284.00

88.    Mr. Weidenbaum provided reasonable estimates that analyzed market conditions and profits of substantially similar business, without resort to speculation.  As such, the Court concludes that it is appropriate to award damages for lost profits.

89.    The Court concludes that the five-year period is appropriate.  Any computation of damages beyond the five-year period would be too speculative to support an award for lost profit damages.

90.    Mr. Weidenbaum concluded that there has been a significant loss of production rights.

91.    The Court concludes that damages based on "loss of brand equity" are too speculative to award under Washington law.

92.    The Court awards damages in the amount of **$1,459,300.00**, which is the value of the lost profits projected over five years.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 30

93.   In Washington, where the plaintiff is faultless and there are multiple

tortfeasors, the defendants against whom judgment has been entered are jointly and

severally liable for the plaintiff's total damage.  Wash. Rev. Code § 4.22.070.

94.   Wash. Rev. Code § 4.22.070(a) states:

> A party shall be responsible for the fault of another person or for payment of the proportionate share of another party where both are acting in concert or when a person was acting as an agent or servant of the party.

95.   Acting in concern means consciously acting together in an unlawful manner.

*Yong Tao v. Heng Bin Li*, 140 Wash. App. 825, 832 (2007).

96.   All named Defendants acted in concert in the preparation of the false and

misleading materials that were supplied to Plaintiffs and acted in concert to harm

Plaintiffs, or acted independently of each other but caused indivisible harm by their

tortious conduct.

97.   Defendants SLBC, Little, and Davies are jointly and severally liable for all

damages sustained by Plaintiffs.

**<u>Injunctive Relief</u>**

98.   Based on this Order and the Court's previous Order Granting Plaintiffs'

Motion for Anti-Suit Injunction (ECF No. 101), this Court grants the following

Declaratory and Permanent Injunctive Relief:

99.   Plaintiffs are granted Declaratory Judgment, declaring as follows:

    a.    That Plaintiffs in their business enterprise have not made use of any

    alleged knowhow belonging to SLBC through their relationship with SLBC;

    b.    That Plaintiffs in their business enterprise have not made use of any

    alleged confidential information acquired/obtained by Plaintiffs in the course

    of their relationship with SLBC;

    c.    That Plaintiffs have not made use of any alleged intellectual property

    and trademarks belong to SLBC;

    d.    That Plaintiffs have not passed off their company and products as

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 31

those of SLBC;

e.      That SLBC is not entitled to any damages from Plaintiffs for any alleged use of confidential business information, and that SLBC is not entitled to any accounting of any profits or otherwise from Plaintiffs, and is not entitled to any order of payment to SLBC upon any such claims;

f.      That SLBC is not entitled to delivery by Plaintiffs of any documents allegedly in the possession, power and control of Plaintiffs allegedly consisting of advertising or other promotional materials allegedly belonging to or allegedly copied from materials allegedly belong to SLBC;

g.      That SLBC is not entitled to an award of damages for alleged loss and damages allegedly sustained due to any alleged use of SLBC's goodwill by Plaintiffs and alleged appropriation of confidential business information of SLBC;

h.      That SLBC is not entitled to any other relief from any Court against Plaintiffs;

I.      That SLBC is not entitled to an award of costs from any Court against Plaintiffs.

j.      That SLBC is not the owner or licensee of any protected image, advertising, logo, or idea or intellectual property that it alleges to have been wrongfully used or appropriated by Plaintiffs and SLBC lacks standing to make or prosecute any such claims.

100.   Plaintiffs are granted a permanent injunction against SLBC enjoining it, its officers, directors and any persons having or exercising control over SLBC, and any person or entity in active concert or participation with SLBC having actual knowledge of this Injunction, from continuing the proceeding in Northern Ireland under the caption *Strangford Lough Brewing Company Ltd.,* Plaintiffs and *Strategic Intent LLC trading as Palouse Falls Brewing Co. and Jeffrey Greene and Melinda Greene,* Defendants, in the High Court of Justice in Northern Ireland,

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 32**

Queen's Bench Division, 2010 No. 93647 ("Northern Ireland Suit").

101.   SLBC, its officers, directors and any persons having or exercising control over SLBC and any person or entity in active concert or participation with SLBC having actual knowledge of this Order, are hereby ordered to cause the Northern Ireland Suit to be dismissed with prejudice (or the most comparable procedural mechanism under Northern Ireland Law).

102.   Plaintiffs are granted a permanent injunction against SLBC enjoining it, its officers, directors and any person having or exercising control over SLBC, and any person or entity in active concern or participation with SLBC having actual knowledge of this Injunction, from attempting to relitigate, or collaterally attack in any other jurisdiction, any of the claims adjudicated in this action.

**Attorney Fees**

103.   The Court finds that the facts underlying the multiple claims are so intertwined that the related fees cannot feasibly be segregated.  *Simpson v. Thorslund*, 151 Wash. App. 276, 289 (2009).

104.    The Court finds that Plaintiffs' request for attorneys' fees to be reasonable. Specifically, the hourly rates billed by Plaintiffs' counsel, as well as the number of hours billed by Plaintiffs' counsel, are reasonable.

105.   The Court awards fees for the work performed by Plaintiffs' counsel's non-lawyer personnel.  *See McGeevey v. Oregon Mut. Ins. Co.*, 90 Wash. App. 282, 292 (1998), *disapproved on other grounds by Panorama Village Condominimum Owners Ass'n Bd. of Directors v. Allstate Ins. Co.*,  144 Wash. 2d 130 (2001).

106.   The Court awards attorneys' fees in the amount of $213,237.70 and costs in the amount of $24,276.25.

*///*

　　　　Accordingly, **IT IS HEREBY ORDERED**:

　　　　1.    The District Court Executive is directed to enter judgment in favor of Plaintiffs and against Defendants Strangford Lough Brewing Company, Robert

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 33

Little and Anthony Davies, jointly and severally.  The judgment shall include lost profits damages in the amount of $1,459,300.00 and reasonable attorneys' fees and costs in the amount of $213,237.70 (fees) and $24,276.25 (costs).

  2. The hearing set for May 13, 2011, is **stricken**.

  **IT IS SO ORDERED**. The District Court Executive is directed to enter this Order and forward copies to Plaintiffs' counsel and the individual Defendants at their addresses of record.

  **DATED** this 11th day of May, 2011.


      *s/Robert H. Whaley*
      ROBERT H. WHALEY
     United States District Judge


Q:\CIVIL\2009\Strategic Intent\ffcl.wpd

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 34**